22-1064
*Lepper v. Scordino*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 15th day of June, two thousand twenty-three.

Present:

> WILLIAM J. NARDINI,
> MYRNA PÉREZ,
> MARIA ARAÚJO KAHN
> *Circuit Judges.*

---

JOHN LEPPER, NOELLE LEPPER, individually and as parents and natural guardians of their infant children, B.J.L. and B.I.,

> *Plaintiffs-Counter-Defendants-Appellants*,

v.  22-1064

RALPH SCORDINO, THE ESTATE OF RALPH SCORDINO, FORMER VILLAGE OF BABYLON MAYOR AND MAYOR, KEVIN MULDOWNEY, DEPUTY MAYOR, ROBYN SILVESTRI, VILLAGE TRUSTEE, TONY DAVIDA, VILLAGE TRUSTEE, MARY ADAMS, VILLAGE TRUSTEE, STEPHEN FELLMAN, VILLAGE OF BABYLON BUILDING INSPECTOR, SUZANNE SCHETTINO, DEPARTMENT OF PUBLIC WORKS, GERARD GLASS, ESQ., VILLAGE OF BABYLON ATTORNEY, DEBORAH LONGO, PLANNING BOARD, VILLAGE OF

1

BABYLON, JOHN AND JANE DOE, (municipal agents, employees, consultants and/or independent contractors) ##110 who might be further identified in further prosecution of this claim, VILLAGE OF BABYLON,

        *Defendants-Counter-Claimants-Appellees*,

VILLAGE OF BABYLON MAYOR,

        *Consolidated-Defendant*.

---

| | |
|---|---|
| For Appellants: | JOSHUA S. MOSKOVITZ, The Law Office of Joshua Moskovitz, P.C., Jersey City, NJ. |
| For Appellees: | ERIC P. TOSCA, Kelly, Rode & Kelly, LLP, Mineola, NY. |

Appeal from a judgment of the United States District Court for the Eastern District of New York (Joan M. Azrack, *Judge*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

John Lepper ("Lepper") appeals from the March 29, 2022, order of the United States District Court for the Eastern District of New York (Joan M. Azrack, *Judge*) granting summary judgment to defendants. Lepper and his wife, Noelle Lepper, brought several federal and state law claims against the Village of Babylon and various officials, alleging principally that they improperly fined, retaliated against, and harassed the Leppers for building a treehouse at their family home. Lepper appeals alone, challenging the district court's dismissal of Equal Protection claims, which were brought under selective-enforcement and class-of-one theories. The Leppers argued that they were subjected to selective enforcement of the Village Code and treated

2

differently than similarly situated treehouse owners. The district court concluded that the Leppers failed to meet their burden of identifying similarly situated persons and that crucial differences existed justifying any differential treatment, including that the village had received a complaint about only the Leppers' treehouse. *Lepper v. Village of Babylon*, No. 18-cv-7011, 2022 WL 939719, at *8–9, *20 (E.D.N.Y. Mar. 29, 2022). We assume the parties' familiarity with the case.

\* \* \*

The Leppers argue that the district court improperly relied on inferences drawn against them to grant summary judgment. We are not persuaded. "We review de novo a district court's decision to grant summary judgment, construing the evidence in the light most favorable to the party against whom summary judgment was granted and drawing all reasonable inferences in that party's favor." *Covington Specialty Ins. Co. v. Indian Lookout Country Club, Inc.*, 62 F.4th 748, 752 (2d Cir. 2023) (internal quotation marks omitted). "Summary judgment is required if there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Id.* (internal quotation marks omitted).

Summary judgment was appropriate here. A plaintiff proceeding on a selective-enforcement Equal Protection theory must show that "(1) the person, compared with others similarly situated, was selectively treated, and (2) the selective treatment was motivated by an intention to discriminate on the basis of impermissible considerations, such as race or religion, to punish or inhibit the exercise of constitutional rights, or by a malicious or bad faith intent to injure the person." *Hu v. City of New York*, 927 F.3d 81, 91 (2d Cir. 2019) (quoting *Zahra v. Town of Southold*, 48 F.3d 674, 683 (2d Cir. 1995)). The claim "requires proof of disparate treatment and impermissible motivation." *Bizzarro v. Miranda*, 394 F.3d 82, 87 (2d Cir. 2005). "Mere failure to prosecute other offenders," moreover, "is not a basis for a finding of denial of equal protection"

3

under a selective-enforcement theory. *LeClair v. Saunders*, 627 F.2d 606, 608 (2d Cir. 1980). The Constitution "does not require that all evils of the same genus be eradicated or none at all." *Id*.

Plaintiffs who allege a Fourteenth Amendment class-of-one claim must show that they have "been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Analytical Diagnostic Labs, Inc. v. Kusel*, 626 F.3d 135, 140 (2d Cir. 2010) (quoting *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000)). The claim requires "an extremely high degree of similarity between [the plaintiff] and its comparators." *Fortress Bible Church v. Feiner*, 694 F.3d 208, 222 (2d Cir. 2012). The plaintiff must establish that it is "*prima facie* identical" to a comparator by showing that:

> (i) no rational person could regard the circumstances of the plaintiff to differ from those of a comparator to a degree that would justify the differential treatment on the basis of a legitimate government policy; and (ii) the similarity in circumstances and difference in treatment are sufficient to exclude the possibility that the defendants acted on the basis of a mistake.

*Hu*, 927 F.3d at 92 (quoting *Neilson v. D'Angelis*, 409 F.3d 100, 105 (2d Cir. 2005)). Plaintiffs must demonstrate that they were "intentionally singled out for reasons that so lack any reasonable nexus with a legitimate governmental policy" that an improper purpose is "all but certain." *Clubside, Inc. v. Valentin*, 468 F.3d 144, 159 (2d Cir. 2006) (internal quotation marks omitted). Zoning decisions, in particular, require a stringent showing of similarity, because such decisions "will often, perhaps almost always, treat one landowner differently from another." *Olech*, 528 U.S. at 565 (Breyer, J., concurring); *see also Cordi-Allen v. Conlon*, 494 F.3d 245, 251 (1st Cir. 2007) (warning that without a sensible limiting principle, "virtually every zoning decision . . . would be a candidate to find its way to federal court in the guise of an equal protection claim").

4

Drawing all reasonable inferences in Lepper's favor, his selective-enforcement and class-of-one claims fail because he has not shown that he "was treated differently from another similarly situated comparator," a common element of both claims. *Hu*, 927 F.3d at 93. It is undisputed that the village's scrutiny of the Leppers' treehouse began when the village building inspector received a complaint that the Leppers were building a treehouse without a permit. Thus, to identify a similarly situated comparator, Lepper must show, at minimum, that the village was put on notice of another village resident who had built a treehouse without a permit. All other treehouses Lepper identifies existed before he began building, and there is no indication in the record that the village was put on notice that these treehouses were unpermitted. The presence of a complaint about the Leppers' treehouse—and the lack of notice that other treehouses were built without permits—by itself renders the Leppers and their comparators materially dissimilar.[1] *See, e.g.*, *Deegan v. City of Ithaca*, 444 F.3d 135, 146 (2d Cir. 2006) (plaintiff was not similarly situated to other individuals where there was "no record of complaints about anyone but" the plaintiff); *LaTrieste Rest. v. Village of Port Chester*, 188 F.3d 65, 69 (2d Cir. 1999) ("While . . . the previous occupants of the premises violated the zoning restriction and . . . the [v]illage did not enforce the restriction against them, [the plaintiff] failed to show that the [v]illage knew about these violations. Absent such proof, [the plaintiff] would be hard-pressed to show that it was singled out for selective treatment."). The Leppers argue that a jury could find that the village building inspector was aware of the other treehouses, that he required permits from their owners only because the Leppers filed

---

[1] In an affidavit, the village building inspector denied knowing that these unpermitted treehouses existed at the time the Leppers began constructing theirs. Lepper asserts that the treehouses existed "openly and obviously." Appellant's Br. at 31. At best, Lepper's bare assertion could create a dispute as to whether the village knew the other treehouses existed, not whether the village knew the other treehouses existed *without permits*. The others were "longstanding" treehouses, in Lepper's words, *see Lepper*, 2022 WL 939719, at *20, and Lepper points to no evidence adduced in discovery that the village knew of them or their noncompliance with applicable permitting requirements. During the course of this action, the village required the owners of the other treehouses to seek permits, which were granted.

5

suit, and that he approved them on the basis of less extensive permit applications. But even accepting those claims, other facts establish that the treehouse owners were not similarly situated to Lepper. Among other differences, they were not the subjects of complaints and the plans they submitted to the village building inspector did not facially violate the Village Code's setback requirements.[2] *See Deegan*, 444 F.3d at 146. At bottom, Lepper's argument amounts to a claim that the village is unable to enforce its building code against the Leppers because it possibly failed to enforce the code against other treehouse owners. But the Equal Protection Clause does not require villages to enforce their ordinances in every instance in order to retain the ability to enforce them at all. *See Hameetman v. City of Chicago*, 776 F.2d 636, 641 (7th Cir. 1985).

We have considered Lepper's remaining arguments and find them unpersuasive. The judgment of the district court is **AFFIRMED**.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of the Court

---

[2] In his reply brief, Lepper for the first time asserts that a jury could find that the other treehouse owners' "permit applications appeared on their face to raise a concern about compliance with the setback requirements." Appellant's Reply Br. at 4. But Lepper's permit application did not merely "raise a concern about compliance with the setback requirements," *id.*, it was facially noncompliant with the setback requirements, again distinguishing Lepper's and his comparators' situations. The other treehouse owners' permit applications did not show facial violations of the setback requirements. *See id.* at 5–6 (conceding 63 Wyandanch Avenue land survey shows compliance with applicable setback requirements, so long as treehouse under fifteen feet tall); *id.* at 6 (conceding 99 Park Avenue land survey shows treehouse "30' min" away from property line, matching applicable setback requirements); *id.* at 6–7 (making no claim that 250 Fire Island Avenue permit application demonstrated noncompliance with setback requirements).

6